**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20 CR 489 |
| | ) | |
| NATHAN THOMAS, | ) | Judge Joan H. Lefkow |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER (AMENDED)**

Chicago Police Department (CPD) officers stopped a car wherein Nathan Thomas was a backseat passenger. After observing the smell of cannabis in the vehicle and being handed a small amount of it by Thomas, an officer searched the vehicle, recovering a magazine of ammunition. A gun was found on Thomas. He has been charged with possession of a firearm as a felon in violation of 18 U.S.C. § 922(g)(1).[1] Before the court is Thomas's motion to suppress all evidence discovered during the traffic stop. (Dkt. 28.) After consideration of the parties' written submissions and the evidence and arguments presented at an evidentiary hearing on June 30, 2021, the court finds as follows and grants the motion to suppress.

---

[1] On December 3, 2019, a Cook County grand jury indicted Thomas for unlawful possession of a weapon in violation of 720 Ill. Comp. Stat. 5/24-1.1(a) and as an armed habitual criminal under 720 Ill. Comp. Stat. 5/24-1.7(a). On August 11, 2020, Thomas was indicted on the pending federal charge.

# THE EVIDENCE

**I.     Police Report**

According to CPD Officer Stuart Majerczyk's original case incident report,[2] on November 10, 2019, at approximately 11:00 p.m., he and Officer Jalen Woods were on routine patrol in a marked vehicle traveling northbound on Stony Island Avenue near 79th Street in Chicago. They were behind a white Hyundai Sonata. The officers "observed the back seat passenger not wearing a seat belt[,] putting the vehicle in violation of 625 Ill. Comp. Stat. 5.0/12-603.1. [The officers] activated emergency equipment and curbed said vehicle … and spoke to the driver of the vehicle and smelled a strong odor of cannabis emitting from the vehicle." The officers asked the back seat passenger, now known as Thomas, if he had any cannabis on him. Thomas affirmed that he did and voluntarily handed over a bag containing approximately five grams of suspected cannabis to the officers.

The officers then asked Thomas "to exit the vehicle and [they] observed a bulge in the front waist band," after which Thomas also indicated that he had a gun in his waistband, which turned out to be a Glock 23, 40-millimeter loaded handgun. A search of the car revealed a black magazine with an unknown number of live .40 caliber rounds inside a sock in the passenger-seat pouch. Thomas admitted to owning the magazine. The officers took Thomas into custody.

**II.    Officer Woods**

On November 10, 2019, Officer Woods worked a shift from 3:00 p.m. to 11:00 p.m. with Officer Majerczyk. Majerczyk drove a CPD patrol Ford Explorer SUV. The patrol SUV's in-car camera did not function, but Woods's body-worn camera (BWC) did.

---

[2] The date/time on the report is November 11, 2019 at 2:30 a.m. Although the briefs reference an arrest and an incident report, only one report is in evidence.

At approximately 11:00 p.m., the officers drove behind a white Hyundai Sonata traveling northbound on Stony Island Avenue near 79th Street in Chicago. At that time, the lighting on the street was "pretty good" with multiple street lights at the intersection. A "slight drizzle" was falling. Woods's passenger-side window was down (or at least cracked).[3]

The SUV was behind the Sonata at a stop light (based on comparison with Government Exhibit Photo 1) somewhat less than one car length away. Woods smelled the odor of burnt marijuana. He also observed that the back seat passenger was not wearing a seat belt. He told Majerczyk about the seat belt, but he was not "100 percent sure,"[4] and Majerczyk drove alongside the right side of the car into the intersection and turned left (northwest) onto South Chicago Avenue to allow Woods an opportunity to confirm that the backseat passenger did not have on his seat belt. Woods confirmed that the passenger was not belted and informed Majerczyk.

The officers conducted a traffic stop on South Chicago Avenue shortly after making the turn. Woods exited the SUV and approached the backseat passenger, who was Thomas. As Woods approached Thomas's open window,[5] he did not see Thomas unbuckle his seat belt and he continued to smell burnt cannabis. He asked Thomas for identification and informed him that he had smelled the "loud" odor of marijuana "before we even got out of the car." Woods observed that Thomas did not have on his seat belt.

---

[3] Woods BWC (at 00:01:57) shows the window down approximately 2 inches.

[4] In response to a question as to why he would want to look at the car from the right to get a look at the backseat passenger seat belt, Woods responded, "Just because initially we saw it and, you know, it could have been a hunch and we don't do traffic stops unless we a hundred percent know and are for sure. To pull over to the side of the car to get the double-check to verify. The passenger was sitting on that side of the vehicle and also the seat belt hangs from -- hangs from that side of the vehicle as well."

[5] Woods BWC video (at 00:02:10) shows the window down approximately 4 inches.

Nobody in the car was actively smoking as Woods walked up. Woods asked Thomas if there was any marijuana in the car. Thomas affirmed and handed him a bag with marijuana. The officers then ordered the occupants out of the car. Woods stood outside the Sonata with the occupants while Majerczyk searched inside the car. Majerczyk found an extended magazine inside the car. Woods then handcuffed Thomas and recovered a gun from his pants. Majerczyk wrote the incident report. Although trained to review the reporting officer's report once written, Woods did not recall whether he did so in this instance.

On cross-examination, Woods testified that he reviewed Majerczyk's reports before testifying and believed them accurate. He acknowledged, however, that the reports did not disclose that the officers smelled cannabis while in the SUV.[6] He conceded that the SUV was stopped behind the Sonata at the intersection for not more than 4 seconds, the point at which he observed the unbuckled seat belt. Woods believed he had smelled cannabis before the stop at the light, but he conceded that the arrest report stated, "[Arresting Officer] spoke to the driver of the vehicle and smelled a strong odor of cannabis emitting from the vehicle," lacking reference to smelling it while in the SUV. He conceded that an image from the video showing a view from the SUV into the rear of the Sonata did not show a seat belt fixture. Woods confirmed that his BWC video does not show the SUV veering to the right of the Sonata while making the turn. He conceded that, if the SUV had been to the right of the Sonata, in order to confirm the unbuckled seat belt, he would have had to look down and to the left. He conceded that the video does not show him turning his torso, so he must have just turned his head (which suggests that his sightline was blocked by Majerczyk seated to his left).

---

[6] Counsel asked, "Now, while you were stopped for these four seconds, what do you assert that you observed first, the odor of cannabis or a seat belt violation?" Woods responded, "The odor of cannabis first. I'm pretty sure we smelled the odor of cannabis before we stopped as well."

### III. Officer Majerczyk

Officer Majerczyk's testimony was consistent with that of Woods about the scene at 79th Street and Stony Island Avenue, the weather, lighting, and such. At approximately 11:00 p.m., he and Woods were northbound on Stony Island Avenue preparing to turn northwest onto South Chicago Avenue. They were a "safe distance" behind a white Hyundai Sonata, approximately a couple of feet. The six-way intersection was well-lit. They were stopped approximately 10 seconds.

Majerczyk observed a strong smell of marijuana emitting from the Sonata, a matter he and Woods discussed while in the SUV. Woods also told him that the back seat passenger was not wearing a seatbelt. As he went through the intersection, Officer Majerczyk pulled the SUV "slightly to the right" to give Woods a better view of the passenger. He did not himself observe whether the passenger's seat belt was fastened. Then, he turned on the emergency lights on the SUV and pulled the Sonata to the curb.

Majerczyk exited the SUV and approached the driver of the car. As he approached, he smelled a strong odor of cannabis. He asked the driver if he had "weed" in the car and asked for his driver's license and proof of insurance. The driver failed to produce his driver's license and insurance card, so Majerczyk directed the driver to step out of the car. Woods directed the two remaining passengers out.

Majerczyk searched the car and found an extended magazine inside a white sock in the pocket of the passenger seat back in front of where Thomas had been seated. At this time, all three of the detainees were placed in handcuffs. After the firearm was found on Thomas's person, Thomas (and the driver, for driving without a license) were taken into custody and the car was impounded.

Majerczyk wrote the arrest and incident reports at the Fourth District police station. It was the end of his shift and he had approximately one hour to do so. Before preparing the report, he spoke briefly with Woods, but he did not review the BWC recordings at that time. Woods did not review his report prior to submission. Majerczyk forgot to note in his report that he smelled marijuana before he stopped the car and indicated that the gun was found before the magazine, which was incorrect.

During cross-examination, Majerczyk conceded that he omitted from his reports that he smelled cannabis from inside the SUV before the stop and that he pulled a bit to the right for better observation of the passenger in the Sonata. He conceded that his grand jury testimony three weeks after the incident was that the officers curbed the vehicle and, when they approached, they smelled burnt cannabis. He conceded that, during the grand jury proceeding, although he was asked only questions that could be answered yes or no, the information that formed the basis of the questions came from him. He testified that he was unaware that section 12-3.1(a) prohibits an officer from searching or inspecting a vehicle, its contents, the driver, or a passenger when executing a traffic stop solely for failure to wear a seat belt. He testified that Woods lifted himself up over him to confirm that Thomas did not have on a seat belt.[7]

## IV.  Video Evidence

The video evidence reveals several additional salient facts. The streets appear to be well lit with many overhead lights at the large intersection. The rain created glare on the windows at the time of initial encounter. The video evidence does not indicate whether the seat belt was or was not buckled. The driver's window of the SUV was closed (Majerczyk BWC at 00:02:02).

---

[7] On redirect, Majerczyk testified that on November 10, 2019, he was not aware that the in-car dash camera was not working. His incident report states that it was. This was offered to show that, if Majerczyk thought a dash camera existed when he was interviewed by the prosecutor in July, 2020, he would not have falsely stated that he pulled alongside the Sonata.

Other than the back seat passenger-side window, the windows of the Sonata were closed (Majerczyk BWC at 00:02:02; Woods BWC at 00:02:10). The SUV went through the intersection barely stopping and continued through the intersection behind the Sonata. (Woods BWC at 00:01:30–00:01:47.) There is no indication that the SUV was ever to the right of the Sonata. There is no corroboration that Woods lifted or turned his body to the left to look down into the Sonata. In fact, Woods seemed to acquiesce to counsel's suggestion on cross-examination that his vision would have been blocked. Woods can be heard telling the passenger that he smelled "weed" before he got out of the car.

## ANALYSIS

A traffic stop is a seizure under the Fourth Amendment and, as such, it must be reasonable. *Tapley* v. *Chambers*, 840 F.3d 370. 376 (7th Cir. 2016). As summarized in *United States* v. *Jackson*, 962 F.3d 353, 357 (7th Cir. 2020),

> The government bears the burden of proving by a preponderance of the evidence that reasonable suspicion supported the traffic stop.
>
> The Fourth Amendment permits officers to conduct a traffic stop when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity… Although a mere hunch does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause. Even the reasonable belief that a driver committed a minor traffic infraction will support a stop. This is an objective standard, based upon the facts available to the officers at the moment of the seizure.

(internal citations and quotation marks omitted). The court is to determine whether the facts and circumstances within the officer's knowledge are "sufficient to warrant a prudent person in believing the suspect has committed or is committing an offense." *United States* v. *Sawyer*, 224 F.3d 675, 678–79 (7th Cir. 2000). This determination "involves examining the totality of the

circumstances in a common sense manner." *United States* v. *Schaafsma*, 318 F.3d 718, 722 (7th Cir. 2003).

The disposition of the motion rests on whether Majerczyk activated the emergency lights because he had a particularized and objective reason to believe either that Thomas was not wearing a seat belt or that marijuana was being or had recently been smoked in the Sonata. In weighing the evidence, the court has considered that evidence generated closer in time to the event is, in general, likely to be more accurate than that generated significantly later. Where the video evidence confirms the testimony of a witness, that testimony is credited but, where it is inconsistent, the testimony is deemed mistaken or otherwise not credible. Under these principles, the court finds as follows:

1. It is more likely than not that Thomas was riding unbuckled in the Sonata. Thomas has offered no evidence to the contrary, and the video evidence at the stop shows the seat belt unfastened.

2. It is more likely than not that Woods, from his position in the SUV, could not have seen whether Thomas had his seat belt on. Woods could not have seen from directly behind far enough inside the vehicle to see Thomas's lap; he did not explain how he saw it from directly behind; and he admitted that he needed more confirmation. Even if the SUV veered slightly to the right, that would have moved Woods farther from the rear passenger, making it likely more difficult, rather than easier, to observe. These inferences are supported by the video evidence in that there is nothing indicating that Woods moved his body to look down and towards his left into the moving Sonata, and the SUV was never alongside the Sonata which would have given at least Majerczyk an opportunity to observe an engaged shoulder strap.

3. It is more likely than not that Woods smelled marijuana after Majerczyk had already activated the emergency lights, rather than while the two vehicles were at the intersection before the lights were activated. This inference is drawn from the facts that (a) it was merely seconds between the officers' pulling behind the Sonata at the stop light and the activation of the emergency lights (as reflected in Woods BWC at 00:01:35–00:01:46); and (b) although windows of both vehicles were partially down on the passenger side, Woods testified only that he informed Majerczyk of the seat belt. Further, on cross-examination Woods seemed only to be "pretty sure" that he smelled cannabis before the stop. It is counterintuitive that a less serious and less obvious seat belt offense would draw more attention than the smell of cannabis indicating open possession in a moving vehicle. Majerczyk's statement that he and Woods talked about it is, therefore, discounted as is his testimony that he smelled cannabis in the SUV.

4. It is more likely than not that Majerczyk did not smell the odor of cannabis until he approached the Sonata. He stated in his incident report and testified before the grand jury that he smelled cannabis when he was at the driver's side of the Sonata. The report was written close to the time of the incident, making it more likely accurate than his testimony given at the hearing.

5. Even if the odor of marijuana seeped into the moving SUV catching Woods's notice, it is more likely than not that Woods did not inform Majerczyk in that brief period of time that he smelled cannabis. Both officers testified that their attention was focused on whether the passenger was wearing a seat belt. Woods testified that he reported the seat belt violation but did not testify that he reported smelling cannabis.

**CONCLUSION AND ORDER**

Based on these findings of fact, the court must conclude that the government has failed to show that the officers had a particularized and objective basis for suspecting a person within the vehicle of a traffic violation. Although the basis for the stop was particularized as a seat belt violation, the objective evidence points to the conclusion that the officers did not have an opportunity to gain knowledge amounting to "reasonable suspicion." Therefore, the evidence obtained in the search must be and is hereby suppressed. *Mapp* v. *Ohio*, 81 S. Ct. 1684, 1694 (1961).

Date: September 24, 2021

_____
U.S. District Judge Joan H. Lefkow